UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ESAU ERNESTO CHICAS ORTEGA,**

  *Plaintiff*,

v.                                                                  Case No.  SA-25-CV-01229-JKP

**SYLVESTER M ORTEGA, ACTING FIELD DIRECTOR, SAN ANTONIO FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, SECRETARY OF HOMELAND SECURITY; PAMELA JO BONDI, UNITED STATES ATTORNEY GENERAL; MARIA DELEON, ACTING ICE FIELD DIRECTOR, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCMENT; AND WARDEN BOBBY THOMPSON, SOUTH TEXAS DETENTION COMPLEX;**

  *Defendants*.

ORDER GRANTING
<u>PETITION FOR WRIT OF HABEAS CORPUS</u>

Before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, APA Claim, and Request for Immediate Release, (*ECF No. 23*). Respondents filed a Response, (*ECF No. 24*), to which Petitioner filed a Reply, (*ECF No. 25*). Upon consideration of the parties' briefing, provided evidence, and applicable law, the Court grants Petitioner's Amended Petition, (*ECF No. 23*), for the reasons below.

**BACKGROUND**

Petitioner is a native and citizen of El Salvador. *ECF No. 2 at 2*. After Petitioner entered the United States without permission in January 2017, he was subsequently detained and immediately removed. *Id*; *ECF No. 1 at 5*. Petitioner reentered the United States without permission on December 7, 2017, and was redetained. *ECF No. 2 at 2; ECF No. 1 at 5*.

On December 7, 2017, Petitioner's Order of Removal was final, but Petitioner spent two years in Immigration and Customs Enforcement ("ICE") custody while requesting asylum or withholding of removal under the Convention Against Torture. *ECF No. 1 at 5; ECF No. 1-3*. Petitioner expressed a fear of returning to El Salvador. *ECF No. 1-3 at 8*.

Petitioner was later released from ICE custody pursuant to an Order of Supervision and an Immigration Judge signed Petitioner's Deferral of Removal under the Convention Against Torture. *ECF No. 1 at 5–6; ECF No. 1-4; ECF No. 1-5*.

On June 18, 2025, ICE detained Petitioner at his regularly scheduled Order of Supervision check-in. *ECF No. 1 at 6*. Thereafter, Petitioner filed his Petition for Writ of Habeas Corpus (the "Petition") and Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction ("Petitioner's TRO Motion"). *ECF Nos. 1, 2*.

On October 2, 2025, Petitioner filed his Emergency Motion for Immediate Stay of Removal. *ECF No. 7*. Petitioner's counsel, Alicia Perez, informed the Court she was "informed that [ICE] intends to effectuate Petitioner's removal imminently—possibly within the next several hours, including during overnight hours." *Id. at 2*. The Court granted Petitioner's request, ordering that the expedited Order of Removal be immediately stayed until further order from this Court, and that Respondents not transfer Ortega outside of this judicial district during the pendency of this litigation unless otherwise ordered by the Court. *ECF No. 10*.

On October 3, 2025, Respondents filed a Response to Petitioner's TRO Motion. *ECF No. 11*. In the Response, Respondents reported they are seeking to expedite the United States Citizenship and Immigration Services' ("USCIS") review of Petitioner's fear claim regarding third country removal to Mexico. *See id*. Respondents further reported "[o]nce the fear review has been completed, [they] will update the Court through an Advisory within three (3) business days." *Id. at 2*. The same day, the Court held Petitioner's TRO Motion, (*ECF No. 2*), in abeyance pending USCIS' review of Petitioner's fear claim. *ECF No. 12*.

On October 16, 2025, the parties filed a Joint Advisory stating:

1. USCIS interviewed Petitioner Chicas Ortega by phone on October 13, 2025, regarding his fear claim related to third country removal to Mexico.

2. Petitioner was represented by counsel during the 2.5-hour interview. Counsel for both parties conferred by phone on October 13 to confirm that the interview went forward as planned without issue.

3. USCIS issued a decision that the Petitioner did not establish that he is more likely than not to be persecuted or tortured in Mexico. See Exh. A.

4. Petitioner will be seeking a review of the USCIS decision before an immigration judge.

*ECF No. 13 at 1*.

The Court next ordered the parties to confer and advise what issues, if any, remain in this case following USCIS' review of Petitioner's fear claim. *ECF No. 14*. On October 31, 2025, the parties filed their Joint Advisory indicating several issues remain. *ECF No. 15*.

On November 17, 2025, Petitioner's counsel, Alicia Perez, informed the Court's Courtroom Deputy that Petitioner has been removed from the United States. For this reason, the Court set this matter for a hearing on November 19, 2025. *See* Min. Ent. Nov. 19, 2025.

At the November 19, 2025, hearing the Government confirmed Petitioner remained in the jurisdiction of the Court. *Id*. Petitioner also confirmed the injunctive relief sought in the Petition

relates to the merits of the ultimate issues and sought to file an amended petition. *Id*. Therefore, the Court refrained from granting injunctive relief and informed the parties the Court would issue a decision addressing the merits of Petitioner's amended petition. *See ECF Nos. 21, 22*.

On November 26, 2025, Petitioner filed his Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, APA Claim, and Request for Immediate Release, (*ECF No. 23*). Respondents filed a Response, (*ECF No. 24*), to which Petitioner filed a Reply, (*ECF No. 25*).

In his Amended Petition, Petitioner asserts his detention violates the Fifth Amendment's Due Process Clause and that his removal is not reasonably foreseeable pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). Additionally, Petitioner asserts claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

On December 17, 2025, the Court held a second hearing in this matter to clarify Petitioner's claims asserted against Respondents in his Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, APA Claim, and Request for Immediate Release, (*ECF No. 23*).

**LEGAL STANDARD**

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id*. (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

4

## ANALYSIS

### I. Procedural Due Process

Petitioner asserts his detention violates the Fifth Amendment's Due Process Clause because ICE decided to revoke his Order of Supervision without providing (1) the required notice of reasons for the revocation of Petitioner's release; and (2) the required prompt initial informal interview to afford Petitioner an opportunity to respond to the reasons for revocation stated in the notice. *ECF No. 23 at 6–9*.

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13.

As recently explained by a sister district court:

> The distinction between 8 C.F.R. § 241.4 and § 241.13 is salient because § 241.13(i) restricts revocation more that § 241.4(l)(2). Whereas § 241.4(l)(2) permits revocation in the discretion of the revoking official when an alien falls into one of the four specific categories, § 241.13(i) permits revocation only if (1) the alien "violates any of the conditions of release," or (2) "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(1)–(2).

*Grigorian v. Bondi*, No. 1:25-CV-22914, 2025 WL 2604573, at *4 (S.D. Fla. Sept. 9, 2025).

Under both regulations, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal inter-

5

view promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

Here, on June 18, 2025, ICE detained Petitioner at his regularly scheduled Order of Supervision check-in. *ECF No. 1 at 6*. It is undisputed that ICE provided Petitioner a Notice of Revocation of Release on July 9, 2025. *ECF No. 23-1*. The Notice states:

> **Notice of Revocation of Release**
>
> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.
>
> Based on the above and pursuant to 8 CFR 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that your removal is unlikely. If you are not released following the informal interview, you will receive notification of a new review, which will occur within approximately three months from the date of this notice.

*Id. at 1*. As such, per the Notice, ICE revoked Petitioner's release pursuant to 8 C.F.R. § 241.13. It is also undisputed that ICE did not conduct Petitioner's informal interview until July 9, 2025. *ECF No. 23-1 at 3*. Accordingly, the Court finds that Respondents violated their own regulations under § 241.13(i).

First, ICE must determine the detainee is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). Respondents assert that but for the Court's stay of removal, Petitioner faces imminent third country removal to Mexico. *ECF No. 24 at 4*. "While that may [perhaps] be the case now, § 241.13(i)(2) requires that this determination is made before the removable alien has had his release revoked." *David Viktorovich Nikolayev v. Kristi Noem, et al.*, No. 3:25-CV-03208, 2025 WL 3539163 (S.D. Cal. Dec. 10, 2025) (citing *Tran v. Noem*, No. 3:25-CV-02391, 2025 WL 3005347, at *2 (S.D. Cal.

6

Oct. 27, 2025)). The record does not show that a changed circumstances determination was made before Petitioner being redetained on June 18, 2025.

Petitioner cites the testimony provided by Maria De Leon, ICE Assistant Field Director. *ECF No. 23-2*.[1] Ms. De Leon's testimony indicates:

(1) Before revoking Petitioner's supervision, ICE had no assurance of any country accepting him;

(2) Before revoking Petitioner's supervision, ICE did not know whether Petitioner's removal could be accomplished within the near future;

(3) Before revoking Petitioner's supervision, Ms. De Leon did not review Petitioner's A-file, conducting only a "cursory review" of his case;

(4) Ms. De Leon did not know how long Petitioner will be in custody prior to Petitioner being removed from the United States;

(5) Ms. De Leon identified the changed circumstances as "the willingness of more countries to accept citizens that are not their own;"

(6) ICE detained Petitioner on June 18, 2025, despite his Order of Supervision remaining valid; and

(7) ICE detained Petitioner without Petitioner committing any crime.

*See ECF No. 23-2 at 5–12, 17–21*. Thus, with "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Government has violated their own rule under § 241.13(i)(2). *See Nikolayev*, 2025 WL 3539163, at *2 (citing *Tran*, 2025 WL 3005347, at *2) (finding the same).

Second, an alien must "be notified of the reasons for revocation of his or her release" that are actually "stated in the notification." § 241.13(i)(3); *Nikolayev*, 2025 WL 3539163, at *2 (citing *Tran*, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release")). The most specific reason given for Peti-

---

[1] Maria De Leon's testimony was provided in Petitioner's initial case filed in the Western District of Texas. *See* Cause No. 5:25-CV-00689. That case was dismissed without prejudice. *See* Cause No. 5:25-CV-00689, (*ECF No. 28*).

7

tioner's revocation, three weeks after ICE detained him, was merely "changed circumstances in your case." *ECF No. 23-1*. This is conclusory and does not satisfy due process. *Nikolayev*, 2025 WL 3539163, at *2 (citing *Tran*, 2025 WL 3005347, at *3) (finding the same)); *Lesic v. LaRose*, No. 3:25-CV-02746, 2025 WL 3158675, at *3 (S.D. Cal. Nov. 12, 2025) (same).

Finally, after redetaining an alien who was out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." § 241.13(i)(3). Although the Government may have interviewed Petitioner three weeks after redetaining him, the record demonstrates the Notice of Revocation of Release was provided the same day. *ECF No. 23-1 at 3*. The record also demonstrates ICE did not provide prior notice to counsel or serve counsel a copy of the Notice of Revocation of Release or the interview form. *ECF No. 23 at 10–12*; *ECF No. 23-1 at 3*. This failing, too, violated Petitioner's procedural due process rights. *See Nikolayev*, 2025 WL 3539163, at *2 (citing *Tran*, 2025 WL 3005347, at *3) (finding the same)); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

"[T]he essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (citing *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that the "[f]undamental features of procedural due process are fair notice of the reasons for the possible loss of liberty and a

8

meaningful opportunity to address them"). Likewise, under these regulations, "in order to revoke conditional release, the Government must provide adequate notice" and give the noncitizen "an opportunity to respond to the reasons" offered for the revocation. *Noem v. Abrego Garcia*, ––– U.S. ––––, 145 S. Ct. 1017, 1019 (2025).

Here, ICE's conclusory explanation for revoking Petitioner's release did not offer Petitioner adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention "informal interview." *See Perez-Escobar*, 792 F. Supp. 3d at 226; *see also Mard v. Town of Amherst*, 350 F.3d 184, 189 (1st Cir. 2003) (explaining that "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for," the opportunity to be heard) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978)).

Respondents do not dispute they failed to follow their own rules for redetainment, instead arguing, unclearly, that while the agency's compliance with the regulations fell short, "a remedy for a procedural due process violation is substitute process." *ECF No. 24 at 5*. Notably, the case Respondents cite to for support does not reference 8 C.F.R. § 241.13. *See Mohammad v. Lynch*, No. 3:16-CV-00028, 2016 WL 8674354 (W.D. Tex. May 24, 2016). Further, the *Mohammad* court based its proposition on a different case from a district court in the Northern District of Alabama. *See Achouatte v. Holder*, No. 4:11–CV–03977, 2012 WL 2358185, at * 3 (N.D. Ala. June 14, 2012). Neither of these holdings are binding on this Court, and the Court does not find *Mohammad* or *Achouatte* persuasive. The Court also adds Respondents do not adequately brief what, if any, substitute process they provided Petitioner. The Court is left to guess Respondents are equating providing Petitioner the informal interview and Notice of Revocation of release three weeks after redetaining him with substitute process. The Court declines to engage in such

guess work, in part because Respondents were given ample time to respond to the Amended Petition.

As to the appropriate remedy for these procedural due process violations, several courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Nikolayev*, 2025 WL 3539163, at *2 (citing *Truong v. Noem*, No. 3:25-CV-02597, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases)); *Tran*, 2025 WL 3005347, at *1–4 (same).

Therefore, because Respondents failed to comply with § 241.13(i) when revoking Petitioner's Order of Supervision, issuing a writ to reinstate that release is warranted. This will be "without prejudice" to the remedies that Respondents may otherwise have. *Nikolayev*, 2025 WL 3539163, at *3; *Tran*, 2025 WL 3005347, at *3.

## II. Prolonged Detention Under *Zadvydas*

Because the Court finds Petitioner's Procedural Due Process arguments are meritorious, and Petitioner is entitled to relief in any event, the Court will not address Petitioner's arguments that his removal is not reasonably foreseeable pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## III. Administrative Procedure Act Claims

Additionally, Petitioner asserts claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). At the December 17, 2025, hearing Petitioner clarified the relief sought pursuant to his APA claims is vacatur of the revocation of Petitioner's Order of Supervision, as well as declaratory and injunctive relief. *See* Min. Ent, Dec. 17, 2025. Because the Supreme Court has previously held that injunctive and declaratory relief is not available in habeas cases, and his claims "necessarily imply the invalidity of [his] confinement," the Court dismisses Peti-

tioner's APA claims. *E.g.*, *P. B. Petr., v. Thomas Bergami, et. al.*, No. 3:25-CV-02978-O, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025); *Sobirjanov v. McShane*, No. CV 24-4129, 2025 WL 1737781, at *2 (E.D. Pa. June 23, 2025).

In *Heikkila v. Barber*, 345 U.S. 229 (1953), an alien whom the Attorney General had ordered deported brought an action against an officer of the Immigration and Nationalization Service "seeking 'a review of agency action' as well as injunctive and declaratory relief." *Id*. at 230. The Supreme Court explained that it was "clear that prior to the Administrative Procedure Act[,] habeas corpus was the only remedy by which deportation orders could be challenged in the courts" and that courts had "consistently rejected attempts to use injunctions, declaratory judgments and other types of relief for this purpose." *Id*.

The Supreme Court then rejected the contention that the Administrative Procedure Act expanded the reviewability of agency action or the remedies available in habeas. *See id*. at 235–36. The Court reaffirmed the rule that "recognizes the legislative power to prescribe applicable procedures for those who would contest deportation orders." *Id*. at 237. "Congress may well have thought that habeas corpus, despite its apparent inconvenience to the alien, should be the exclusive remedy in these cases in order to minimize opportunities for repetitious litigation and consequent delays as well as to avoid possible venue difficulties connected with any other type of action." *Id*.

The Supreme Court has similarly suggested in other cases that a writ of habeas corpus is the sole remedy available here.

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that when a prisoner attempts to bring a claim under 42 U.S.C. § 1983 to challenge "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to imme-

diate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id*. at 500.

In a more recent case, issued earlier this year, *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025), the Supreme Court explained that the petitioners sought relief, in part under the Administrative Procedure Act, that "'necessarily impl[ies] the invalidity' of their confinement and removal . . . [so] their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Id.* at 672 (internal quotation marks omitted) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)).

Here, similarly, Petitioner's APA claims fall within the core of the writ of habeas corpus. Petitioner seeks declaratory relief that Respondent's actions to detain him violate the APA, which necessarily implies a challenge to the validity of his confinement. Thus, any challenge to the validity of Petitioner's confinement must be brought in habeas and cannot be brought under 5 U.S.C. § 704 or §706(2)(A). *E.g.*, *P. B. Petr.*, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025); *Sobirjanov*, 2025 WL 1737781, at *2.[2] Because neither party has meaningfully briefed the viability of Petitioner's APA claims as asserted in this context, the Court finds Petitioner's APA claims fail.

IV. **Attorney's Fees**

---

[2] *See also Make The Rd. New York v. Wolf*, 962 F.3d 612, 638 n.3 (D.C. Cir. 2020) (Rao, J., dissenting) (The presumption of reviewability is rooted in the Administrative Procedure Act rather than the Constitution. *See Abbott Labs. v. Gardner*, 387 U.S. 136 (1967). It has since drifted into the jurisdictional setting. *See, e.g.*, *Guerrero-Lasprilla*, 589 U.S. 221, 242–45 (2020) (Thomas, J., dissenting). The Supreme Court, however, has long held the presumption in favor of review must yield when it conflicts with Congress's plenary power over jurisdiction and the political branches' power over immigration. *See Heikkila v. Barber*, 345 U.S. 229, 234 (1953) (noting that the APA presumption of reviewability does not displace Congress's plenary power over jurisdiction and the political branches' control over aliens)); *but see Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025) (considering revocation of petitioner's parole, not his detention itself); *Orellana v. Francis*, No. 25 Civ. 04212 (OEM), 2025 WL 2402780 (E.D.N.Y. Aug. 19, 2025) (evaluating petitioner's claim that the revocation of his parole violated the APA, asserted as part of petitioner's *habeas* petition, and not reaching petitioner's eight other causes of action (including an asserted Due Process cause of action).

Finally, while Petitioner requests attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), the Fifth Circuit has held that recovery of attorney fees are not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). Because, under the circumstances of this case, the Court concludes the issues fall within the core of the writ of habeas corpus the Court thus denies the request for fees.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Amended Petition, (*ECF No. 23*). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Esau Ernesto Chicas Ortega from custody by **no later than 7:00 p.m. December 23, 2025**. Petitioner shall comply with all conditions that were in effect before his June 18, 2025, redetainment.

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. Respondents shall **FILE** an advisory **no later than 12:00 p.m. December 24, 2025**, confirming that Petitioner has been released.

A final judgment will be issued separately.

It is so ORDERED.
SIGNED this 22nd day of December, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE

13